IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

JEREMY LAM, on behalf of himself
and all others similarly situated,

      CASE NO.:

    Plaintiff,

v.

      CLASS REPRESENTATION

BOOKS-A-MILLION, INC. and
BOOKSAMILLION.COM, INC.,

    Defendants.

_____/

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Jeremy Lam, individually and on behalf of all other similarly situated persons ("Plaintiff"), brings this action against Books-A-Million, Inc. and Booksamillion.com, Inc. (collectively "BAM" or "Defendants") for their violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or "the Act"). Plaintiff's claims arise from Defendants' practice of knowingly disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), "personally identifiable information" ("PII") about the video materials Plaintiff and similarly situated consumers request or obtain from the BAM website.

**NATURE OF THE CASE**

1. This is a consumer privacy class action against Defendants, for disclosing their digital consumers' identities and the specific video materials they requested or obtained from the BAM website to Facebook, in violation of the VPPA.

2. Defendants are "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials," thus bringing it within the

VPPA's definition of "video tape service provider." 18 U.S.C. § 2710(a)(4). Specifically, Defendants sell DVDs and other audiovisual materials through their website.

3.  The VPPA prohibits "video tape service providers," such as Defendants, from "knowingly disclos[ing]" consumers' PII, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

4.  Defendants violate the VPPA by disclosing the specific video materials their consumers have requested or obtained to Facebook. Defendants disclose this information to Facebook using the "Facebook Pixel" or "Pixel"—a snippet of programming code Defendants chose to install on the BAM website that sends information to Facebook. In this case, the information shared with Facebook includes the consumer's Facebook ID ("FID") coupled with the title of the video that the consumer requested or obtained on the BAM website.

5.  A consumer's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a person more precisely than a name.

6.  Defendants disclose the consumer's FID and content requested or obtained to Facebook together in a single transaction. Because the consumer's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and easily locate, access, and view a particular consumer's corresponding Facebook profile. In the simplest terms, the Pixel installed by Defendants captures and discloses to Facebook what video a specific consumer requested or obtained on the BAM website.

7.  On behalf of himself and all similarly situated consumers of Defendants, Plaintiff seeks an order enjoining Defendants from further unauthorized disclosures of consumers' PII;

awarding liquidated damages in the amount of $2,500 per violation, attorneys' fees, and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

## PARTIES

8. Plaintiff Jeremy Lam is a citizen and resident of the State of Florida.

9. In the two years before this action was filed, Plaintiff used his Internet-connected device and web-browsing software ("browser") installed on that device to visit and request, obtain, and purchase video content on the BAM website.

10. Defendant Books-A-Million, Inc. is a Delaware Corporation with its principal place of business located at 1209 Orange St. Wilmington, DE 19801.

11. Defendant Booksamillion.com, Inc. is an Alabama Corporation with its principal place of business in Birmingham, AL.

12. Books-A-Million, Inc. is a retail chain with 260 stores in 32 states and the District of Columbia. Per their website's "About Us" description, "In addition to its primary retail component, the corporation includes… an e-commerce division operating as BOOKSAMILLION.COM."

13. Books-A-Million, Inc., has at least 20 retail locations in the State of Florida, including locations in Orange County.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over Defendants because, inter alia, Defendant conducts business in this state, including, but not limited to, the 20 or more retail locations within the State of Florida, including in Orange County.

15. This court has subject matter jurisdiction over this action pursuant to Fla. Stat. §§ 26.012 and 34.01(c) because the amount-in-controversy in this action exceeds $30,000.00, exclusive of interest, attorneys' fees, and costs.

16. Venue is appropriate in this Court under Fla. Stat. § 47.011 because the cause of action accrued in this Circuit.

## COMMON FACTUAL ALLEGATIONS

### I. Background of the VPPA

17. With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

18. The VPPA was passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

19. While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of data mining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the

'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

20. In this case, Defendants chose to deprive Plaintiff and Class members of that right by systematically disclosing their PII to Facebook.

### II. Defendants Designed the BAM Website to Disclose Consumer' PII, Including Requesting or Obtaining Videos, to Facebook.

21. Defendants operate a website (the "BAM website") in the U.S., accessible from an Internet-connected device at https://www.booksamillion.com/.

22. In programing the BAM website, Defendants installed the Facebook Pixel, thus making the knowing choice to track consumers' PII and send it to Facebook.

23. Defendants allow consumers to request or obtain DVDs, Blu-rays, and other audiovisual materials on the BAM website.

24. After requesting or obtaining videos, Defendants disclose to Facebook, through the Facebook Pixel, the FID of the consumer and the specific video the consumer requested or obtained.

### III. How Defendants Disclose Digital Consumers' PII.

25. Businesses have the option of installing the Facebook Pixel on their websites. Doing so enables the business to collect information about how consumers interact with the business's website, such as whether they initiate purchases on the website, what items they look at, and, relevant here, the particular videos the consumer requests or obtains for purchase.

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century.

26. The Facebook Pixel is a unique string of code businesses can embed on their websites allowing them to track consumers' actions and report the actions back to Facebook.

27. The Pixel can follow a consumer to different websites and across the Internet even after clearing of browser history.

28. The Pixel allows Facebook to build detailed profiles about a website's consumers as those consumers browse the web so that targeted advertisements can be served upon the consumers.[2]

29. To take advantage of advertising and information services offered by Facebook, Defendants programmed the BAM website to include a Facebook Pixel.

30. When a consumer of Defendants adds a video to their cart on the BAM website, the Pixel installed by Defendants sends to Facebook certain information about the consumer and what the consumer requested or obtained. Specifically, Defendants send to Facebook the title of the video and the consumer's FID.

31. An FID is a unique and persistent identifier that Facebook assigns to each of its consumers. With it, anyone can look up the consumer's unique Facebook profile. Simply put, with only an FID and the title of the video—which Defendants knowingly provide to Facebook—any ordinary person could learn the identity of the consumer and the specific video or media content he requested or obtained on the BAM website.

32. Defendants could easily program their website so that this information is not disclosed to Facebook.

---

[2] THE MARKUP, *How We Built a Meta Pixel Inspector*. https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (last visited June 22, 2022).

33. At all relevant times, Defendants knew that the Facebook Pixel disclosed PII to Facebook. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixel's sharing of information with Facebook enabled the BAM website to show targeted advertising to its digital consumers based on the videos they had requested or obtained on the BAM website.

34. As relevant here, Defendants disclosed to Facebook the video title and FID in a single transmission, through the Facebook Pixel as depicted below[3]:



---

[3] For the purposes of demonstrating in this Complaint Defendants' practice of sharing consumers personally identifying information, an exemplary account for "Barbra Marks" was created and utilized.



*Figure 1*

35. In this example, Barbra Marks requested or obtained from the BAM website a video entitled "Scary Movie."

36. The FID is displayed in the "c_user" code. In this example the code is 100084445758299:

*Figure 2*

-8-

37. In this example, the disclosure of the FID is coupled with the title of the video the consumer requested or obtained:



*Figure 3*

38. Any person can specifically identify the consumer requesting or obtaining "Scary Movie" by simply entering "facebook.com/100084445758299" into their search bar:



*Figure 4*

39. Upon pressing enter or search, the following page automatically appears:



*Figure 5*

40. Defendants violate the VPPA by knowingly disclosing consumers' FIDs, together with videos they request or obtain, to Facebook.

### PLAINTIFF-SPECIFIC ALLEGATIONS

41. Plaintiff Jeremy Lam is a consumer of Defendants at both a local BAM store and on the BAM website. He requested, obtained, and purchased videos through the BAM website within the last two years.

42. Plaintiff had a Facebook account during the time he used the BAM website within the last two years. Defendants disclosed to Facebook his FID coupled with the title of the videos he requested, obtained, and purchased from the BAM website.

43. Each time Defendants disclosed his PII to Facebook, it violated his rights under the VPPA.

## CLASS ALLEGATIONS

44.     Plaintiff brings this lawsuit under Fla. R. Civ. P. 1.220(a) and (b) on behalf of the following Class:

> All persons in the United States who used the BAM website to purchase video content, and used Facebook during the time Facebook's Pixel was active on BAM's website.

45.     The "Class Period" is from August 23, 2020, to the present.

46.     Excluded from the Class are Defendants, any controlled person of Defendants, as well as the officers and directors of Defendants and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action and the immediate family members of any such person. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

47.     **Numerosity**: The Class consists of at least hundreds of individuals, making joinder impractical.

48.     **Commonality and Predominance**: Common questions of law and fact exist with regard to the claim and predominate over questions affecting only individual Class members. Questions common to the Class include:

A.     Whether Defendants knowingly disclosed Plaintiff's and Class members' PII to Facebook;

B.     Whether Defendants' conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; and

C.     Whether Defendants should be enjoined from disclosing Plaintiff's and Class members' PII.

49. **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendants' misconduct—disclosing consumers' PII to Facebook.

50. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

51. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Defendants' financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**CAUSE OF ACTION**
**Violation of the Video Privacy Protection Act**
**18 U.S.C. § 2710**

52. Plaintiff incorporates and realleges the above factual allegations by reference.

53. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

54. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Defendants are a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because they are engaged in the business of rental, sale, or delivery of prerecorded audiovisual materials.

55. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members are purchasers of Defendants' video content. Thus, Plaintiff and Class members are "consumers" under this definition.

56. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

57. Defendants knowingly disclosed Plaintiff's and Class members' PII—specifically, their FIDs and the title of the videos they requested or obtained for purchase—to Facebook.

58. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who requested or obtained Defendants' video content, including the specific video materials requested or obtained on the BAM website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

59. Defendants never obtained from Plaintiff, or any Class member informed, written consent. More specifically, Defendants never obtained from Plaintiff or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; Defendants never obtained from Plaintiff or any Class

member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and Defendants never provided an opportunity, in a clear and conspicuous manner, for Plaintiff or any Class member to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

60. Defendants' disclosures were made knowingly, as Defendants programmed the Facebook Pixel into the BAM website code, knowing that Facebook would receive video titles and the consumer's FID when a consumer requested or obtained a video.

61. By disclosing Plaintiff's and Class members' PII, Defendants violated Plaintiff's and Class members' statutorily protected right to privacy in their video-consuming. 18 U.S.C. § 2710(c).

62. As a result of these violations, Defendants are liable to Plaintiff and Class members.

63. On behalf of herself and all members of the Class, Plaintiff seeks to enjoin Defendants' disclosures of PII; liquidated damages in the amount of $2,500 per violation; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

　　i.　Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

　　ii.　Enter judgment in favor of Plaintiff and the Class;

iii. Enjoin Defendants' future disclosures of Plaintiff's and Class members' PII;

iv. Award Plaintiff and Class members liquidated damages they are entitled to under the VPPA;

v. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

vi. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

vii. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: August 25, 2022

    Respectfully submitted,

    NORMAND PLLC

    */s/ Jake Phillips*
    Jacob L. Phillips
    Florida Bar No.: 120130
    3165 McCrory Place, Ste. 175
    Orlando, FL 32803
    Tel: (407) 603-6031
    Fax: (888) 974-2175
    jacob.phillips@normandpllc.com
    ean@normandpllc.com

    Joseph Henry (Hank) Bates, III (*pro hac vice* forthcoming)
    Lee Lowther (*pro hac vice* forthcoming)
    Courtney E. Ross (*pro hac vice* forthcoming)
    **CARNEY BATES & PULLIAM, PLLC**
    519 W. 7th Street
    Little Rock, AR 72201
    Telephone: (501) 312-8500

Facsimile: (501) 312-8505
hbates@cbplaw.com
llowther@cbplaw.com
cross@cbplaw.com

Michael W. Sobol (*pro hac vice* forthcoming)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
msobol@lchb.com

Douglas I. Cuthbertson (*pro hac vice* forthcoming)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
dcuthbertson@lchb.com